U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 18 2006

CLERK, U.S. DISTRICT COURT
By _____
Deputy

**IN THE UNITED STATES COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| WAYNE STOKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-954-M |
| | § | |
| | § | |
| NORRIS CYLINDER COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed by Defendant Norris Cylinder

Company ("Defendant" or "Norris") on December 2, 2005.  Also before the Court is Defendant's

Motion to Strike Plaintiff's Summary Judgment Proof, filed on January 11, 2006.  In this action,

Plaintiff Wayne Stoker alleges that he suffered injury as the result of Defendant's violations of

Title VII of the Civil Rights Act.  Plaintiff alleges that Defendant, by whom he is still employed,

provided a hostile work environment and systematically discriminated against him because he is

African American.  The Court interprets the Complaint to contend that Plaintiff was (1) denied

overtime opportunities afforded white employees, (2) denied promotions afforded white

employees, (3) subjected to harassment and a hostile work environment, and (4) retaliated

against, all in violation of Title VII.

1

## Background

Norris is a manufacturer of metal cylinders in Longview, Texas. It maintains four Labor Grades for its manufacturing positions. Correspondingly higher skills, experience, and pay levels are required as the grades advance from Labor Grade 1 to Labor Grade 4. Each Labor Grade level encompasses a variety of positions.

Plaintiff was hired by Defendant into a Labor Grade 1 position in 1988. Over the next decade, Plaintiff held positions at various Labor Grade levels, increasing to Labor Grade 4. In October 2000, Plaintiff was reassigned from his Labor Grade 4 position to a Labor Grade 2 position, which, according to Defendant's undisputed evidence, was due to a reduction in force.

Until April 2004, Defendant had a Job Preference Program ("Program") in place. Under the Program, an employee was permitted to identify up to three positions for which the employee would like to be considered should such a position become available. An employee could identify preferences at any single Labor Grade level, or a combination of levels (e.g., an employee might identify two Labor Grade 2 positions and one Labor Grade 4 position). If a position became available, Defendant would look first to fill the open spot with an employee who currently had on file an expressed preference for the available position, considering the date the request was made, and for skilled positions, prior training and experience. In the absence of valid job preference forms for a position that became available, Defendant's policy was to offer the job to the best suited candidate who would most benefit the company, including outside candidates. Plaintiff was familiar with the Program, having submitted numerous preference requests and having secured at least one position via the Program.

In November 2002, the Grade 3 Billet Saw Operator position became available. Plaintiff

2

had not submitted a preference request for the position, acknowledging in his deposition that he was "not really" interested in it.  In fact, no Norris employee had filed a preference for that position.  Management subsequently interviewed and hired an outside person, David Russell Yates ("Yates"), who is white.

On August 1, 2003, Plaintiff filed an EEOC charge on a standard EEOC Form, which was completed by an EEOC representative before Plaintiff signed it.  *See Defendant's Appendix, Exhibit A.*  In the "Discrimination Based On" section of the charge, one can check Race, Color, Sex, Religion, National Origin, Retaliation, Age, Disability, and/or Other.  Only the "Race" box on Plaintiff's form was checked.   In the section entitled "Date(s) Discrimination Took Place," December 2, 2002, is identified both as the earliest date of discrimination and the latest date of discrimination.  The "Continuing Action" box in the "Date(s) Discrimination Took Place" section is unchecked.  The EEOC charge also states the following:

I.      Personal Harm

On or about December 2002, I was not given job preference nor given the opportunity to bid for the position of Billet Saw Operations.

II.     Respondent's Reasons

Fred Grindle, High Pressure Plant Foreman, non-Black told me to sign up for job preference.

III.    Discrimination Statement

I believe I am being discriminated against because of my race, Black for reasons as stated in violation of Title VII of the Civil Rights Act of 1964, as amended in that only non-Blacks are given job preference.

Also on August 1, 2003, Plaintiff personally completed an EEOC Charge Questionnaire.

3

*See Defendant's Appendix, Exhibit G.* In response to the questions, "What action was taken

against you that you believe to be discriminatory?" and "What harm, if any, was caused to you or

others in your work situation as a result of that action?", Plaintiff responded:

> Unable to better myself in the Company. No chance for promotions no matter
> how hard you work or how productive you are. When higher paying jobs become
> available to you, you're overlooked thru [sic] rule changes or they act as though
> they didn't know you were interested in the position.

In response to the question, "What was the most recent date the harm you alleged took

place?", Plaintiff responded "Dec 2002."

On February 5, 2004, the EEOC concluded its investigation and dismissed Plaintiff's

Charge, issuing to him a "Dismissal and Notice of Rights." In an accompanying letter to

Plaintiff, the EEOC stated that it

> reviewed the evidence contained in your file, and your rebuttal. We recognize that
> you feel very strongly about your charge. Nonetheless, the information in your
> file shows it is unlikely that any more investigation will result in finding
> discrimination in that the evidence shows you did not self nominate yourself for
> the position.

This letter confirms that the EEOC construed Plaintiff's charge as relating only to the

events of December 2002 regarding the Billet Saw Operator position.

In its Motion for Summary Judgment, Defendant argues that summary judgment should

be granted as to all of Plaintiff's claims because: (1) all but Plaintiff's claims relating to the Billet

Saw Operator position are beyond the scope of Plaintiff's EEOC charge; (2) claims arising prior

to October 4, 2002 are time-barred because Plaintiff did not bring them within 300 days of the

alleged discrimination; (3) Plaintiff's claims are substantively without merit; and (4) Plaintiff's

4

harassment and retaliation claims do not rise to the level required to be actionable under Title VII.

Summary judgment standard

Summary judgment is warranted when the facts and law, as reflected in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. Pourgholam v. Advanced Telemktg. Corp., No. 3:01-CV-2764-H, 2004 U.S. Dist. LEXIS 10659, at *2-3 (N.D. Tex. June 9, 2004) (citing Fed. R. Civ. P. 56; Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986)). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." Lynch Props., Inc. v. Potomac Ins. Co., 140 F.3d 622, 625 (5th Cir. 1998) (citing Celotex, 477 U.S. at 322-25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence

5

favorable to the nonmovant that the jury is not required to believe. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 152 (2000).  Further, "the court must draw all justifiable inferences in favor of the nonmovant." Keelan v. Majesco Software, Inc., 407 F.3d 332, 338 (5th Cir. 2005).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." Lynch Props., 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Friou v. Phillips Petroleum Co., 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. Lynch Props., 140 F.3d at 625.  Further, a party must do more than simply show some "metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

### Scope of the EEOC Charge

The timely filing of an EEOC charge is a condition precedent to suit on a Title VII claim, and the scope of a Title VII suit extends no further than the scope of the investigation that can reasonably be expected to grow out of the charge. *See* Young v. City of Houston, 906 F.2d 177 (5th Cir. 1990); Thomas v. Texas Dep't of Crim. Justice, 220 F.3d 389 (5th Cir. 2000); Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970); Craven v. Texas Dept. Of Criminal Justice-Institutional Div., 151 F.Supp.2d 757, 770 (N.D. Tex. 2001)(Lindsay, J.).  Defendant also argues that "the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*." Def. Brief at 10 (citing Johnson v. Milwaukee School of

6

Engineering, 258 F.Supp.2d 896, 904 (E.D. Wis. 2003)(citation omitted).

Because Plaintiff's EEOC charge deals only with the December 2002/Billet Saw Operator position, Defendant argues that each of Plaintiff's remaining claims – those dealing with overtime discrimination, harassment, and retaliation – should be dismissed for failure to exhaust administrative remedies.

In his Response, Plaintiff argues that he provided more detail about discrimination to the EEOC, but did not draft the charge itself. However, Plaintiff's affidavit in opposition to Defendant's Motion for Summary Judgment does not address Plaintiff's meeting at the EEOC or the drafting of Plaintiff's EEOC charge. The only evidence in the record that even arguably supports Plaintiff's assertion that he supplied the EEOC representative with information that was not included in his charge is at pages 126-27 of Plaintiff's own deposition.[1]  There, Plaintiff and counsel for Defendant had the following exchange:

Q      Okay. Is – that's in a nutshell your complaint about the promotions?
A      Well, that's the way she wrote it up but actually I – I had more down but for some reason that's what she put down.
Q      Okay. Did you – what did you tell the EEOC representative when this was prepared, Exhibit 28 [referring to the EEOC Charge]?
A      I – I don't recall. I don't know what all but I know it's more than that.
Q      But you don't know what it was?
A      No, I don't – I don't have that information before me.
Q      Okay. And that's not available any longer?
A      I think I said I have a copy of it at home.
Q      Did you write something up and give it to her?
A      Right. This is a – it's a deal you have to fill out.
Q      Okay. But this is not the one you filled out?
A      That's what she typed up. That's actually what she typed up.
Q      Okay. What is it you believe that you complained about that Ms. Rincon from the EEOC left off?

-------

[1]Plaintiff did not direct the Court to his deposition in his discussion of this issue.

A      It was several deals, several things about, you know, the discrimination, not all white employees don't have to go through job preference or anything like that. They're placed in jobs and they want to say to tell me that I had to go through job preference, which I wasn't even given an opportunity to do that because before that job even became open they had already placed Darin Young on that job.[2]

Q      Okay. But those are some sort of general remarks you had about the way Norris assigns promotions or assigns jobs to individuals, right?

A      Some of them.

Q      Pardon me?

A      Some of it.

Q      Okay. Was there anything else?

A      I can't recall, man, offhand.

Q      Okay. So as we sit here today, that's what we're here to talk about –

A      Right.

Q      – is your – is your complaint that the – that the company did not give you , as you said here, job preference or an opportunity to bid for the position of billet saw operations in December, 2002 – in or about December, 2002?

A      Right.

The Court finds that the investigation that can reasonably be expected to grow out of the plain language of Plaintiff's EEOC charge would not include an investigation of claims of retaliation, harassment or hostile work environment, or overtime discrimination. The Court further finds that Plaintiff has neither presented evidence that such an investigation *did* result, nor set forth evidence indicating that Plaintiff discussed these subject areas with an EEOC representative who then failed to include the additional information on Plaintiff's EEOC charge. Essentially, Plaintiff asks the Court to permit him to go forward with claims that fall outside of the ambit of his EEOC charge, purely on the basis of his vague assertion that he provided additional unspecified information to the EEOC which is not reflected in the charge. The Court declines to do so. Accordingly, all of Plaintiff's claims, except that for discrimination with

---

[2]Darin Young operated the billet saws for several months prior to Yates being hired as Billet Saw Operator in December 2002.

8

respect to the filling of the Billet Saw Operator position in December 2002, are **DISMISSED** for

Plaintiff's failure to exhaust administrative remedies. Because Plaintiff failed to exhaust his

administrative remedies with respect to all but the Billet Saw Operator claim, the Court does not

reach Defendant's argument that all of Plaintiff's claims for actions after October 2003 are time-

barred, and that Plaintiff's retaliation and harassment claims do not rise to a level actionable

under Title VII.


Does there exist a genuine issue of material fact as to Plaintiff's Billet Saw Operator claim?

The Court examines Plaintiff's Billet Saw Operator claim under a modified McDonnell

Douglas approach. *See* Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir. 2005)

(citing Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004); McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973)); Hughes v. Texas Keg Steakhouse & Bar, Inc., 2006 U.S.

Dist. LEXIS 11661 (N.D. Tex. 2006)(Lynn, J.); Glover v. City of Dallas, 2006 U.S. Dist. LEXIS

27789 (N.D. Tex. 2006)(Lynn, J.). Under this framework,

> [T]he plaintiff must still demonstrate a prima facie case of discrimination; the
> defendant then must articulate a legitimate, non-discriminatory reason for its
> decision to terminate the plaintiff; and, if the defendant meets its burden of
> production, "the plaintiff must then offer sufficient evidence to create a genuine
> issue of material fact 'either (1) that the defendant's reason is not true, but is
> instead a pretext for discrimination (pretext alternative); or (2) that the
> defendant's reason, while true, is only one of the reasons for its conduct, and
> another "motivating factor" is the plaintiff's protected characteristic
> (mixed-motive alternative).'

Rachid, 376 F.3d at 312.

Thus, Plaintiff must first establish a prima facie case of discrimination. Id.; Keelan, 407

F.3d at 342. If he presents a prima facie case, a presumption of discrimination arises.

Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993).

To establish a prima facie case of discrimination under Title VII, Plaintiff must establish that he is (1) a member of a protected class, (2) is qualified for the position in question, (3) has suffered an adverse employment action, and (4) has been replaced by a person who is not a member of a protected class. Pegram v. Honeywell, Inc., 361 F.3d 272, 281 (5th Cir. 2004). First, as an African American, Plaintiff is a member of a protected class. Second, in support of his assertion that he was qualified to perform the duties of a Billet Saw Operator, Plaintiff submits (1) the sworn statement of Randy Nash ("Nash"), who states that he worked with Plaintiff at Norris for eleven years, during five of which he served as Plaintiff's supervisor; (2) the sworn statement of Chad Brinkman, a Billet Saw Operator at Norris for approximately three years; and (3) the sworn statement of Roy Walker ("Walker"), a former employee of Norris who operated the billet saws for about fourteen years. Based upon the statements of Nash and Walker, as well as the fact that no special certification was required for the Billet Saw Operator position, the Court finds that Plaintiff has satisfied his initial burden with respect to his qualifications, the second prong of a prima facie case. Third, the Billet Saw Operator position is of a higher Labor Grade and, therefore, provides a higher salary than Plaintiff's previously held position, so the Court finds that Plaintiff suffered an adverse employment action when he was not promoted, thereby satisfying the third element of the prima facie case. Id. at 282. Last, the person who was hired as the Billet Saw Operator is white, and not a member of a protected class. Thus, Plaintiff has presented a prima facie case of discrimination, and a presumption of discrimination arises. Defendant must therefore articulate a legitimate, non-discriminatory reason for its employment decision.

Defendant argues that it placed another person in the Billet Saw Operator for legitimate, non-discriminatory reasons. Defendant points out that Plaintiff did not designate the position in the Job Preference Program as one in which he was interested. Plaintiff admitted in his deposition that he generally limited his job preference requests to Labor Grade 4 positions. He did not state a preference for the Billet Saw Operator position because he was not really interested in it. No internal candidate expressed a preference for the Billet Saw Operator position, so Defendant considered outside candidates. Yates had a stable and successful employment history, holding the same position for fourteen years with one employer, whose business was closing. Tim Shiflet, who hired Yates, desired to place an employee in the Billet Saw Operator position who would likely stay in that position for a long time, and Plaintiff had a history of frequently seeking moves from one position to another. Defendant's evidence supports each of these aspects of Defendant's explanation. This evidence establishes that Defendant has met its burden of production with respect to providing evidence of legitimate, non-discriminatory reasons for its decision to hire Yates, rather than Plaintiff. To survive summary judgment, Plaintiff must offer sufficient evidence to create a genuine issue of material fact either that Defendant's non-discriminatory reasons for hiring Yates were pretextual, or that Defendant's reasons, while true, provide only part of the basis for the employment decision, and that Plaintiff's race was another "motivating factor."

In his Response, Plaintiff acknowledges that if Defendant articulates a lawful, non-discriminatory reason for its decision concerning the Billet Saw Operator position, the burden shifts back to Plaintiff. However, Plaintiff fails to demonstrate an understanding of his burden. Plaintiff's counsel cuts and pastes into Plaintiff's Response bits and pieces of law inapplicable to

the facts of this case. Plaintiff never explicitly states which of the alternative modified

McDonnell Douglas theories he employs, but the Court infers from his Response that Plaintiff is

arguing that Defendant's stated reasons for its employment decision are pretextual. The Court,

therefore, does not analyze the "mixed motive" alternative.

As it pertains to this issue, Plaintiff's Response is a collection of accusatory, conclusory,

and confusing statements, and although it is not obligated to do so, the Court has studied

Plaintiff's Appendix in search of any evidence that would create a genuine issue of material fact

as to whether Defendant's stated reasons for hiring Yates were pretextual. Plaintiff's deposition

provides conclusory statements that there were African American employees who could have

capably performed the duties of a Billet Saw Operator had they been hired to do so, and that

Yates, who was not previously a Norris employee, did not use the Job Preference Program to

express a preference for the Billet Saw Operator position. This evidence does not advance

Plaintiff's argument that Defendant's explanation was pretextual. The Court notes Plaintiff's

affidavit, which states that several "Caucasian supervisors have been in closed-door conference

meetings with upper management and have heard the African-Americans at defendant's place of

business being referred to as 'niggers.'" Although such a statement would obviously be

repugnant and offensive, Plaintiff presents no admissible evidence that the statement was made

since, as phrased, it is clearly hearsay, nor does Plaintiff relate it in any way to his claim

regarding the Billet Saw Operator position, failing to even identify when the offensive

statement(s) was allegedly made.

Plaintiff presents in his Appendix an excerpt from Defendant's employment policies. *See*

*Plaintiff's Appendix, Exhibit B.* Entitled "Promotion and Transfer," the excerpt states that

12

promotions "and transfers will be based upon ability, work record, length of service, and the Job

Preference Program when applicable. It is Norris Cylinder Company's policy to fill job openings

from within whenever possible." The evidence confirms that both Yates and Plaintiff were able

to perform the duties of a Billet Saw Operator, and that Yates had a long tenure with one

employer in one position, while Plaintiff had shifted positions at Norris many times. The

excerpted employment policy does not create any genuine issue of material fact as to a pretextual

explanation for Norris's hiring decision. Shiflet's December 15, 2005 deposition, part of which

Plaintiff included in his Appendix, proves not Plaintiff's position, but rather that Defendant hired

Yates for a legitimate, non-discriminatory reason – that Yates was familiar with doing piece-rate

work in a fast-paced operation, and that after interviewing Yates, Shiflet concluded that Yates

was the best candidate for the job, in part because of his stable job history.

In short, Plaintiff has presented a prima facie case of race discrimination, but Defendant

met its burden of producing evidence of legitimate, non-discriminatory reasons for its hiring

decision. In response, Plaintiff presented no evidence that Defendant's stated reasons for the

hiring decision were pretextual. Accordingly, the Court finds that Defendant's Motion for

Summary Judgment should be **GRANTED**, and Plaintiff's case **DISMISSED** with prejudice,

with all costs taxed against Plaintiff. Though Defendant asks the Court for an award of

attorney's fees incurred in defending itself in this case, it presented the Court with no evidence

on which to base such an award. The Court, therefore, declines to provide Defendant with such

relief.

In its Motion to Strike Plaintiff's Summary Judgment Proof, Defendant identifies various

portions of Plaintiff's Appendix that Defendant argues should be stricken because they fail to

meet proper evidentiary standards.  With respect to the statement set forth in Paragraph 16 of

Defendant's Motion to Strike, the Motion is **GRANTED** because, as stated above, this statement

is inadmissible hearsay.  The Motion is otherwise **DENIED** as moot.  The Court has considered

each of these statements, and found that their inclusion in Plaintiff's Appendix does not in any

way alter the Court's analysis or conclusions.

      **SO ORDERED.**

      **DATED**: May 18, 2006.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE